## JOHN QUINBY *vs.* MOSES SPRAGUE.

Where the condition of a bond was, that the obligor should cut down the wasteway of his mill-dam twenty inches below the top of the then wasteway, and should draw down the water and keep the water drawn down twenty inches below the top of the existing wasteway, from the first day of *June*, to the first day of *October*, in each and every year thereafter; *it was held*, that if the wasteway was kept down twenty inches *lower than it was* when the bond was made, that the condition was complied with, although the surface of the water was less than twenty inches lower than the former wasteway.

EXCEPTIONS from the Court of Common Pleas, REDINGTON J. presiding.

Debt on a bond from the defendant to the plaintiff, dated *Dec.* 11, 1833, the condition of which was as follows. " That if the said *Moses Sprague* shall cut down the wasteway of the mill-dam at the mills now owned by the said *Moses Sprague*, twenty inches below the top of the present wasteway of said dam, and shall draw down the water and keep the water drawn down twenty inches below the top of the present wasteway of the dam aforesaid, from · the first day of *June* to the first day of *October*, in each and every year hereafter, then," &c. The plaintiff claimed for damages done to his mowing land above the dam between the first of *June* and fifteenth of *July*, 1837. At the trial the plaintiff contended, that the wasteway was a portion of the dam thirty-three feet in length, and the defendant insisted, that the wasteway was a part of the dam but thirteen feet in extent, and evidence was introduced on both sides upon this point. Prior to *June* 1, 1834, the defendant cut down the thirteen feet space to the depth of twenty inches. There was no evidence that there had been, prior to the giving of the bond, any custom or practice to draw off the water by hoisting the mill-gates or other sluice ways, except over the dam and over the wasteway. Between the first of *June* and fifteenth of *July*, 1837, the plaintiff's meadow, situated about two hundred rods above the dam, was overflowed from five to seven inches, and thereby injured. During this time the water continued to run over the new wasteway to the depth of several inches, and the water above the dam was considerably higher than the top of the new wasteway.

The plaintiff contended, that even if the thirteen feet space was the true wasteway intended by the parties when the bond was given, and if it had been cut down to the depth of twenty inches, still the defendant had not fulfilled the conditions of the bond, because the defendant was also bound to draw the water down and keep it down twenty inches below the top of the old wasteway. The Judge instructed the jury, that if the thirteen feet space was the wasteway intended by the parties when the bond was given, and if the space was soon after the giving of the bond cut down to the depth of twenty inches, and kept free and open from the first of *June* to the first of *October*, in each year after the date of the bond, it was a fulfilment of the bond on the part of the defendant ; that in that event it would be immaterial what depth of water flowed over the new wasteway ; and that they would find a verdict for the defendant, although the water was not kept down to the point to which the wasteway was cut down. The verdict was for the defendant, and the plaintiff filed exceptions.

*Wells,* for the plaintiff, argued, that the condition of the bond plainly and unequivocally provided that the defendant should do two things. 1. Cut down the wasteway of the dam twenty inches below the top of the wasteway then existing. 2. In some way draw down the water, and keep it drawn down, twenty inches below the top of the then wasteway. The condition of the bond provides as much for doing the last as the first. It is enough that the bond prescribes that both these things shall be done ; but there was good reason for requiring it. The first could be seen at any time, and the slightest inspection would show whether it was or was not done. Still it was necessary that the water should be lowered twenty inches below the top of the then wasteway to prevent its flowing back upon the plaintiff's meadow, and the defendant engaged to do it in the best way he could, the mode being left at his election. Any other construction would make the last half of the condition entirely nugatory, and would make a different contract for the parties from that which they have made by the most clear and explicit language. *Hawes v. Smith,* 3 *Fairf.* 429.

*Emmons,* for the defendant, contended, that the intention of the parties was simply, that *Sprague* should cut down his wasteway twenty inches, and should keep it so cut down during the time

specified in the condition. This was inferred to be the meaning of the condition of the bond, because the parties have in so many words expressed the exact number of inches which the defendant should cut down his dam. It was not their intention or expectation that any other part of the dam should be cut down, or that the wasteway should be lowered more than twenty inches. If the intention of the parties had been that at all events the water should be drawn down and kept down twenty inches below the top of the existing wasteway, then no number of inches by which the cutting down was to be regulated would have been specified. The defendant could not know beforehand how much he must cut down the wasteway of his dam in order to fulfil the condition of his bond. Were it not so, the specification of the number of inches for cutting down the wasteway was deceptive and calculated to mislead and ensnare the defendant, because it is apparent that the first water that flowed over the wasteway after it was cut down must have occasioned a breach of his bond, as the top of the water could not have been twenty inches below the top of the wasteway as it was before it was cut down. Covenants are to be construed according to the intention and meaning of the parties, and the good sense of the case, and technical words should give way to such intention. 1 *Wms'. Saund.* 320, *and notes.*

The opinion of the Court was drawn up by

EMERY J. — It is urged by defendant that a great obstacle against a recovery by the plaintiff arises from the fact, that to the jury was presented for decision the question whether the thirteen feet space was the wasteway intended by the parties when the bond was given. By their verdict we must understand that such was the intention of those interested and entering into the contract. It was further found by the jury that the same space was, soon after the giving of the bond, cut down to the depth of twenty inches, and kept free and open from the first of *June* to the first of *October*, in each year, after the date of the bond.

These facts go very strongly to warrant the direction of the Court " that it was a fulfilment of the bond on the part of the defendant, that in that event it would be immaterial what depth of water flowed over the new wasteway, and that they would find a

verdict for the defendant, although the water was not kept down to the point to which the wasteway was cut down."

We have not arrived at this conclusion without much hesitation. But considering the experience which must have existed previous to the giving of the bond, and the nature of the obstruction which was to be reduced, we are led to believe that the principal object of the bond was to secure the cutting down of the wasteway twenty inches below the top of the then present wasteway. It was equivalent to saying, you shall keep the water drawn down the distance required, by cutting down the wasteway of the mill-dam twenty inches below the top of the present wasteway of the dam. We ought not to suppose that it was the object of the parties to call for a greater sacrifice, because if it had been, it seems quite surprising that any designation should have been made of the number of inches, which should be cut away. It does not absolutely follow that a man may always be protected against responsibility merely from the circumstance that he did not expect all the consequences, which may flow from some unguarded expressions, that may be retained in an instrument, which he may have signed. Indeed it is generally safer to conclude that every expression has been well considered, and effect should be given to all the terms, and in cases of doubt, the construction should be against the person intending to be bound. But it is not to be forgotten that the condition is introduced for the relief of the obligor. It is to be justly expounded to carry out the intention of the parties, to be gathered from the whole instrument.

It is argued that the object was to prevent the flowing of the land above in wet summers. And that there were other modes of reducing the water by means of gates. This may all be true. Nothing however of the kind is presented to us in the bond, or the condition. It might be true that the water would be thoroughly enough drawn down by nearly prostrating the dam or the wasteway. But could that have been the intention of the parties when twenty inches was named as all that was expected? We would rather adopt a construction, which should prevent surprize upon the individual, who appears immediately to have proceeded to reduce the wasteway to the limits prescribed, and which for years

conformed in its effects to the practical construction, which seemed satisfactory when the stipulation was made.

For these reasons the exceptions must be overruled.